## STATE of Maine

v.

## Dalmon LANDRY.

Supreme Judicial Court of Maine.

Argued March 23, 1983.

Decided April 20, 1983.

Janet T. Mills, Dist. Atty. (orally), Farmington, for plaintiff.

Hyde, Day & Ferris, William Thomas Hyde (orally), Skowhegan, for defendant.

Before GODFREY, NICHOLS, ROBERTS, CARTER, VIOLETTE and WATHEN, JJ.

WATHEN, Justice.

The defendant, Dalmon Landry, appeals from a conviction of simple assault and

terrorizing (17–A M.R.S.A. §§ 207, 210 (1983)) resulting from a jury trial in Superior Court (Franklin County). The sole issue on appeal is whether the presiding justice abused his discretion by failing to exclude from evidence a letter written by the defendant, as a necessary sanction for a discovery violation. We find no abuse of discretion and therefore deny the appeal.

The relevant facts may be briefly summarized as follows: The defendant called upon his former wife and child for a visit during the early morning hours of November 14, 1981. Upon entering the bedroom he found his former wife in the company of an adult male. A scuffle ensued and the male companion left the house by way of the bedroom window after sustaining considerable damage to his face. The former wife, in the meantime, had fled to the neighbors to seek assistance and the defendant departed, taking his young son with him. At trial, defendant maintained that he had entered the bedroom only to seek his ex-wife's permission for the removal of his son and that her companion was the initial aggressor while he acted only in self-defense.

On the morning of trial, the prosecutor reviewed the State's file with defense counsel to determine whether all discoverable material had been provided.[1] In the course of that review, it was discovered that the file included a letter written by the defendant to his ex-wife shortly after the incident. The letter had not previously been furnished to the defense, and counsel claimed to be unaware of its existence.[2] The prosecutor inquired of defense counsel whether there would be a request for a continuance, and, there being no response, proceeded to trial. Defense counsel did not raise the issue of the discovery violation with the court until the State sought to refer to the letter during cross-examination of the defendant in an effort to impeach. At that point, the defense objected to the State's use of the letter on the basis of the discovery violation, and sought to exclude the letter from evidence. Over defendant's objection, the Court permitted the State to introduce, through the defendant, excerpted language from his letter: "I think your man got off easy. I'm not satisfied with the way I left him. He deserved more. But you can tell him he's safe, he's paid his dues." On redirect examination, defense counsel introduced into evidence the entire letter, which, with the exception of the quoted portion, was largely conciliatory in tone.

On appeal, the defendant claims, and the State acknowledges, that a violation of the rules of discovery occurred as a result of the State's failure to furnish to the defendant a copy of the letter. The defendant argues that the State's acknowledged violation of M.R.Crim.P. 16 required that the letter be excluded from evidence.

We assume that the letter in question is automatically discoverable pursuant to M.R. Crim.P. 16(a)(1)(B) which provides that:

(a) *Automatic Discovery*

(1) *Duty of the Attorney for the State.* The Attorney for the State shall furnish to the defendant within a reasonable time:

. . . .

(B) Any written or recorded statements and the substance of any oral statements made by the defendant.[3]

---

1. The record reflects that substantial discovery had been provided to the defendant while the matter was pending in the District Court prior to indictment and supplemental discovery was provided after indictment. All discovery appears to have been provided by informal practice, without request or motion by the defendant, and without court order.

2. It is unclear how the State came into possession of the letter. The State claimed to be under the impression, until the morning of trial,

that the letter had been placed on file by the defendant's counsel. Defendant's ex-wife died in a vehicular accident five days after the date on the letter and the exact route which the letter followed remains unknown.

3. Although the issue is not raised by the State, the applicability of Rule 16(a)(1)(B) to the letter in this case would involve a determination of whether the letter constitutes a "statement" within the meaning of the rule, or whether "statement" is limited to direct communica-

■ The good faith of the State's attorney ("[t]he nature of the default, whether it be by inadvertence or design") is immaterial to a determination of a breach of M.R. Crim.P. 16 although it may be a relevant consideration in selecting a sanction. "It is of no comfort to the defendant, when he is improperly denied the opportunity to prepare adequately for trial or when he is unfairly surprised at trial, that a good faith mistake foreclosed the discovery to which he was entitled under rule 16(a)." *State v. Ledger,* 444 A.2d 404, 411–12 (Me.1982). The simple fact remains that the letter was not furnished to the defendant prior to trial. The fact that the proffered statement was to be used only for purposes of impeachment is similarly immaterial to a determination of breach. *See, e.g., United States v. Mitchell,* 613 F.2d 779, 781 (10th Cir.), *cert. denied,* 445 U.S. 919, 100 S.Ct. 1283, 63 L.Ed.2d 604 (1980) (statement to be used for rebuttal).

■ The imposition of sanctions for an established breach of Rule 16 is committed to the discretion of the presiding justice. M.R.Crim.P. 16(d) provides that the presiding justice "may take appropriate action" to remedy a violation. The trial court has the authority not only to select a sanction but also to decide whether any sanction is required. *State v. Barden,* 432 A.2d 404, 411 (Me.1981); *State v. Bishop,* 392 A.2d 20, 26 (Me.1978). Once having exercised its discretion, the trial court's ruling may not be set aside absent a showing of an abuse of discretion. *Id.* The primary test is whether the ruling was in the furtherance of justice. *State v. Mason,* 408 A.2d 1269, 1272 (Me.1979).

■ It is beyond dispute that the letter used in this case to impeach the defendant did "add to or subtract from" the proof of disputed issues at trial. *See State v. Hutchins,* 433 A.2d 419, 421 (Me.1981). Nevertheless, in order to establish an abuse of discretion, the defendant must show that he was prejudiced in fact by the court's ruling. *See State v. Smith,* 400 A.2d 749, 757 (Me.1979); *State v. Rich,* 395 A.2d 1123, 1130 (Me.1978).

An analysis of prejudice may properly take into consideration the defendant's trial tactics. *See Barden,* 432 A.2d at 411–12; *Smith,* 400 A.2d at 757. In the present

tions between a defendant and a government agent.

The precise scope of the term "statement" was left unresolved by the Advisory Committee to the amended rules, and has yet to be addressed by this Court. The federal courts, interpreting the analogous federal rule, have largely rejected arguments that written or recorded "statements", as opposed to oral "statements", are discoverable under F.R.Crim.P. 16(a)(1)(A) only if made to government agents. *See, e.g., United States v. Caldwell,* 543 F.2d 1333, 1352–53 (D.C.Cir.), *cert. denied,* 423 U.S. 1087, 96 S.Ct. 877, 47 L.Ed.2d 97 (1975) (letter written by defendant to third person which was subsequently turned over to the police: court refuses to limit language of rule because "fundamental fairness" dictates "granting the accused equal access to his own words, no matter how the government came by them"); *United States v. Gleason,* 616 F.2d 2, 24 (2d Cir.), *cert. denied,* 444 U.S. 1082, 100 S.Ct. 1037, 62 L.Ed.2d 767 (1980) (government seeks to use letter written by defendant prior to crime for purposes of impeachment: court refused to limit language because "the rule is intended to enable a defendant to obtain prior to trial any of his own statements relevant to the crime charged against him so that he will be able to prepare properly to face the evidence that may be introduced against him at trial."); *United States v. Sherwood,* 527 F.Supp. 1001, 1003 (W.D.N.Y.1981) (recorded telephone conversations made by alleged victim: "statement" cannot be read as limited to mean "formal" statement by defendant). *But see United States v. Pollack,* 534 F.2d 964, 975–76 (D.C.Cir.1976) *cert. denied,* 429 U.S. 924, 97 S.Ct. 324, 50 L.Ed.2d 292 (1976); *United States v. Walk,* 533 F.2d 417, 419 (9th Cir.). These latter cases, however, are distinguishable in that the statements sought by the defendant in each case were written by third persons and simply *included* statements attributed to the defendant. This broad interpretation of discoverable written or recorded statements, to encompass all such statements *made by* the defendant—no matter *to whom made,* has also been adopted by the ABA Standards for Criminal Justice. Such liberal policy, the drafters reasoned, is important not only to assist in the preparation of a defendant's case, but also to permit a more orderly pretrial determination of the *admissibility* of any statements. 2 ABA Standards for Criminal Justice § 11–2.1 (2d Ed.1980).

case, the defendant put himself on the stand with prior knowledge of the State's possession of the letter. At no point prior to the State's cross-examination did the defendant inform the court of the State's violation of rule 16, nor did he request any protective rulings or sanctions. Rather, he proceeded to take full advantage of his direct testimony, and only then sought to limit the scope of the State's cross-examination. Although the State's breach should not be held to the defendant's throat as a dagger, neither should it be used by him as a shield.

Finally, it is significant that the only sanction urged by defense counsel was the ultimate sanction of exclusion. Counsel chose not to request additional time to reflect upon the new evidence nor did he request any other sanction available under M.R.Crim.P. 16(d). *See Hutchins,* 433 A.2d at 421–22. There was no abuse of the court's discretion in allowing the State to use the letter for purposes of impeachment. Once the defendant's credibility was in issue, the State's right to a full cross-examination and the opportunity to impeach the witness could properly have been considered as outweighing the need to impose the sanction of exclusion.

The entry must be:

Judgments of conviction affirmed.

All concurring.