**William I. SMITH**

v.

**Robert WELCH.**

Supreme Judicial Court of Maine.

Argued June 21, 1994.
Decided Aug. 17, 1994.

Tobias A. Dorsey (orally), Thomas Carey, Carey & Associates, P.A., Rumford, for plaintiff.

Michael G. Messerschmidt (orally), Elizabeth A. Olivier, Preti, Flaherty, Beliveau & Pachios, Portland, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA and LIPEZ, JJ.

LIPEZ, Justice.

William I. Smith appeals from an order of the Superior Court (Oxford County, *Delahanty, C.J.*) affirming a District Court (Rum-

ford, *Sheldon, J.*) judgment as a matter of law in favor of Robert Welch on Smith's complaint for protection from harassment. 5 M.R.S.A. §§ 4651 to 4660–A (1989 & Supp. 1993). Finding no error, we affirm.

The record before the trial court reflects that Smith began working as a janitor at the Rumford town hall on December 20, 1991. In November 1992, Welch became the town manager to whom Smith reported. In December 1992, Welch informed Smith that he intended to eliminate Smith's overtime hours. Because he could get no response from Welch, Smith called a selectman a few days prior to March 12, 1993 to inquire about overtime hours that he had worked but for which he had not been paid.

On March 12, 1993, Welch called Smith into his office. Smith testified that Welch was ranting, raving, pounding on his desk and hollering at Smith for calling the selectman. Smith was frightened. Welch gave Smith a memorandum setting a fixed work schedule and also gave him a written warning for breaking the chain of command.

On March 15, 1993, Welch again called Smith into his office. Smith asserted that Welch talked in a raised voice which was almost a holler. Although this meeting did not last long, he was scared because of Welch's loud, angry voice. On March 17, 1993, Welch called Smith into his office again. Smith declared that Welch, in a voice which was raised and a little angry, said he wanted to discontinue the practice of having "work fare" workers clean the town offices because he did not trust them. Smith said that he "started getting these—kind of a lightning shocks across my chest, and I started sweating. And I felt like my . . . eyeballs were gonna flip over backwards."

Smith worked the remainder of his shift, stopped at a restaurant, and then went home. He checked himself into the hospital later that day and was discharged the following day. On discharge, the doctor gave Smith a prescription for medication and told him he could return to work the following Monday. Smith advised Welch of the doctor's instruc-

tions and told him that he would be at work on Monday. Smith later expressed to the doctor his concerns about the medication and his fears of verbal abuse from Welch. As a result, the doctor restricted Smith from returning to work until further notice.

Smith did not immediately inform Welch of the change in the doctor's recommendation. Instead, Smith went to the town welfare office to inquire about disability, rent assistance, and other benefits, with the intention of thereafter going to Welch's office to inform him of the indefinite leave. While Smith was talking with the welfare officer, Welch appeared. He hollered at Smith and told him to go to Welch's office. Frightened by Welch's angry voice, Smith had a police officer escort him to Welch's office. When Smith arrived, Welch yelled at Smith again about his work plans. Smith left the office feeling light-headed and crying. As a result of these incidents, Smith feared meeting Welch and avoided going to the town hall or to a restaurant where Smith had seen Welch in the past.

■ Smith brought a complaint in the District Court for a temporary protection from harassment order which was denied. The District Court subsequently held a hearing on a permanent protection from harassment order. After Smith presented his case, Welch moved for and the court granted a judgment as a matter of law[1]. Smith appealed to the Superior Court, which affirmed the judgment.

### Standard of Review

■ When the Superior Court has acted as an intermediate appellate court, we review the District Court's decision directly. *E.g. Vector Marketing Corp. v. Maine Unemployment Ins. Comm'n*, 610 A.2d 272, 274 (Me. 1992). Smith argues that the judgment entered at the close of his case was equivalent to a directed verdict for purposes of review. Smith asserts, therefore, that we must consider the evidence and all reasonable inferences therefrom in a light most favorable to

---

1. Welch actually moved to dismiss the complaint at the completion of Smith's case, and the court adopted that dismissal language in its bench de-

cision and its subsequent written order. The correct terminology under M.R.Civ.P. 50(d) is a motion for judgment as a matter of law.

him and decide whether, by any reasonable view of the evidence, a contrary verdict could be sustained.[2] We disagree with Smith's statement of the applicable standard of review.

■ This case was not tried before a jury. In a nonjury case, a motion for a judgment as a matter of law is made pursuant to M.R.Civ.P. 50(d):[3]

> [A Rule 50(d)] motion, like the common law motion for nonsuit, in effect seeks a judgment for the defendant on the merits. It is the functional equivalent of a motion for directed verdict under Rule 50(a) in a jury case. The judge, however, does not merely decide the legal sufficiency of the plaintiff's evidence but may decide the factual issues and render judgment against the plaintiff, making findings of fact and conclusions of law under Rule 52(a).

M.R.Civ.P. 50(d) advisory committee's note to 1983 amend., Me.Rptr., 449–458 A.2d LXI-II. When the trial court grants the Rule 50(d) motion after resolving factual issues against the plaintiff, "we are not bound to view the evidence in the light most favorable to the plaintiff. Rather we must accept the facts found by the presiding justice unless those findings are clearly erroneous." *Wyman v. Osteopathic Hosp. of Maine*, 493 A.2d 330, 333–34 (Me.1985). *See also Leeber v. Deltona Corp.*, 546 A.2d 452, 456–57 (Me. 1988). In this case the trial court acted as a factfinder under Rule 50(d) by finding that Smith failed to meet his burden of proof on an essential element of his claim—proof of intent.

### Review of Trial Court's Finding

■ Our statute defines harassment as follows:

> "Harassment" means any repeated act of intimidation, harassment, physical force or threat of physical force directed against any person, family or their property or advocate with the intention of causing fear or intimidation or to deter free exercise or enjoyment of any rights or privileges secured by the Constitution of Maine and the United States Constitution. This definition does not include any act protected by the constitutional guarantee of free speech.

5 M.R.S.A. § 4651(2) (1989).[4] In order to establish a claim of harassment pursuant to section 4651, Smith had to show that Welch acted with the requisite intent. *State v. Hills*, 574 A.2d 1357, 1359 (Me.1990) ("[a] defendant is protected against an overly broad application of the statute by its requirement that the conscious object of [a] defendant's conduct be to *harass* the complainants."); *cf. State v. Ilsley*, 595 A.2d 421, 423 (Me.1991) ("Ilsley also argues that the State failed to prove that he had the requisite intent to harass Poland"). "[In such a harassment suit, t]he question of ... intent is a matter of concern for the factfinder." *Hills*, 574 A.2d at 1359.

■ The trial court found, on the evidence presented, that Smith had not proven the intent required by section 4651(2).[5] We re-

---

**2.** Smith's reference to "a directed verdict" at the close of plaintiff's case also reflects terminology no longer apt under M.R.Civ.P. 50. Again, reference should be to a "judgment as a matter of law."

**3.** Rule 50(d) provides:

> **Motion for Judgment as a Matter of Law in Nonjury Case.** In an action tried by the court without a jury, a motion may be made at any time for judgment as a matter of law on any claim. The motion shall specify the claim or claims as to which judgment is sought and the issue or issues as to which it is contended that the law and the facts entitle the moving party to judgment. Before considering the motion, the court shall ascertain that the party opposing the motion has been fully heard with respect to the issue or issues raised. If the court

finds against the party opposing the motion on any issue that under the substantive law is an essential element of any claim, the court may enter judgment as a matter of law against that party on that claim. Alternatively, the court may decline to render any judgment until the close of all the evidence. If the court renders judgment on the merits, the court shall upon request make findings as provided in Rule 52(a).

**4.** This section was amended in 1993, after the District Court's hearing. 5 M.R.S.A. § 4651(2) (Supp.1993) (incorporating P.L.1993, ch. 199, § 1(2)). This amendment made relatively minor changes to section 4651(2), none of which affects the analysis of this case.

**5.** There is a conflict between the bench ruling of the trial court, which was specific to "the context

view this factual finding for clear error and find none.

The entry is:

Judgment affirmed.

All concurring.

of this case," and a subsequent written order which referred to employers generally. We disregard the broad pronouncements of the trial court, which were unnecessary for its decision, and instead focus on the finding implicit in its bench decision that Smith failed to prove by a preponderance of the evidence that Welch's intention in dealing with him was to cause fear or intimidation rather than to get him to obey work rules.